**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sandrine Mounier, et al., <br><br> Plaintiffs, <br><br> v. <br><br> RLI Corporation, et al., <br><br> Defendants. | No. CV-19-01778-PHX-GMS <br><br> **ORDER** |

Pending before the Court is Defendant RLI Corp. d/b/a RLI Insurance Company ("Defendant RLI")'s Motion for Summary Judgment. (Doc. 37.) For the following reasons, the Motion for Summary Judgment is granted.[1]

## BACKGROUND

The following facts are not disputed. Defendant Four Season Travel, L.L.C. ("Defendant Four Season"), a California company, is in the business of hiring out buses and drivers to clients for a variety of services, including tours. Plaintiffs Sandrine and Gustave Mounier ("Plaintiffs"), French residents, purchased a tour of the Western United States through Geo Tours USA ("Geo Tours"). Geo Tours hired Defendant Four Season to provide the tour bus and bus driver for the tour.

On November 10, 2015 the tour bus arrived in Page, Arizona and dropped the passengers, including Plaintiffs, off at their hotel. After the passengers deboarded, the bus driver parked and locked the tour bus in the hotel parking lot. Plaintiffs proceeded to check

---

[1] The Court held oral argument on this matter on January 17, 2020.

into their hotel and explore the shopping district in town. On their way back to the hotel to get ready for dinner, Plaintiffs crossed a crosswalk. While in the crosswalk, Ms. Mounier was hit by non-party Albert Henry's car and fell on her wrist. The accident was .3 miles away from the hotel and occurred about two hours after Plaintiffs had deboarded the tour bus. Ms. Mounier was taken to a nearby hospital and then transported to Utah for further treatment. Plaintiffs were unable to finish the tour, and upon her return to France Ms. Mounier underwent surgery to treat her injuries.

Plaintiffs recovered the limits of Mr. Henry's insurance policy and then notified Geo Tours and Defendant Four Season of their claims. Defendant Four Season turned the claim over to Defendant RLI who had issued a business auto policy including a California underinsured motorist coverage endorsement (the "Policy") to Defendant Four Season. The Policy provides that Defendant RLI "will pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured vehicle.'" (Doc 38 at 3.) The Policy defines an "insured" as "[a]nyone 'occupying' a covered 'auto.'" (Doc. 38 at 4.) Defendant RLI denied Plaintiffs' claim because it found that Plaintiffs did not qualify as "insured" under the Policy.

Plaintiffs brought this action alleging breach of contract and insurance bad faith against Defendant RLI. [2] Defendant RLI now seeks summary judgment on both claims.

**DISCUSSION**

**I. Legal Standard**

The purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary

---

[2] Also included in the action were Defendant Four Season and Defendant Geo Tours. The claims against Defendant Four Season were dismissed when this Court granted Defendant Four Season's Motion to Dismiss. (Doc. 24). Default judgment was entered against Defendant Geo Tours on October 1, 2019. (Doc. 41.)

judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Parties opposing summary judgment are required to "cit[e] to particular parts of materials in the record" establishing a genuine dispute or "show[] that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). A district court has no independent duty "to scour the record in search of a genuine issue of triable fact[.]" *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

## II. Breach of Contract

The parties dispute whether Plaintiffs were "occupying" the tour bus at the time of the accident to qualify as insureds under the Policy. The Policy defines "occupying" as "in, upon, getting, on, out or off." (Doc. 38-2 at 31.) It is undisputed that, at the time of the accident, Plaintiffs were 0.3 miles away from the tour bus and were not getting in, on, out, or off the bus. Thus, the Plaintiffs' coverage determination hinges on whether Plaintiffs were "upon" the tour bus.

As a preliminary issue, the parties disagree on which state's law—Arizona or California—should govern the interpretation of the provision. Under California law, to be "upon" a vehicle, an individual must be performing some act necessarily related to the vehicle and be in its immediate proximity at the time of the accident. *See Cocking v. State Farm Mut. Auto. Ins. Co.*, 6 Cal. App. 3d 965, 971 (Ct. App. 1970) (holding that a man was "upon" a vehicle when he was placing chains on a vehicle's tires because he was "in the requisite physical relationship to the car" and was "using" the car). Under Arizona law, an individual is "upon" a vehicle when the individual's activities at the time of the accident "are in such close proximity to the car and so related to its operation and use that they are an integral part of one's occupancy and use of the car." *Manning v. Summit Home Ins. Co.*,

128 Ariz. 79, 82, 623 P.2d 1235, 1238 (Ct. App. 1980) (finding that an individual who was assisting the driver in placing chains on a vehicle was "upon" the vehicle because she was in close proximity to the car and engaged in an activity related to its operation and use).

The Court finds no conflict here. Both states require insureds to be near the insured vehicle and to be engaged in some activity closely related to the use of the vehicle.[3] Thus, a choice of law analysis for the breach of contract claim is not necessary. *See Lucero v. Valdez*, 180 Ariz. 313, 321, 884 P.2d 199, 207 (Ct. App. 1994) ("If no conflict exists on the controlling issue, the court need not address the choice-of-law issue."). Moreover, because the facts of the accident are undisputed, the Court need only decide whether Plaintiffs qualify as insureds as a matter of law.

Many courts have addressed the issue of occupancy. In *Menchaca v. Farmers Ins. Exchange*, the court held an individual was not "occupying" her motor vehicle when she was hit in a crosswalk after leaving a movie theater in route to her vehicle. 59 Cal App. 3d 117, 129 (1976). The Ninth Circuit also held that an individual was not "occupying" his vehicle when he was about to cross the street after having left and locked the vehicle. *Mendoza v. Aetna Casualty & Surety Company, Inc.,* 15 F.3d 1087 (9th Cir. 1994) (applying California law). In contrast, a man hit while assisting the driver in attaching snow chains to the vehicle was found to be occupying the vehicle. *Manning*, 128 Ariz. at 82, 623 P.2d at 1238; *see also Cocking,* 6 Cal. App. 3d at 971 (man was insured when he was injured while preparing to place car chains on the vehicle).

Plaintiffs' circumstances are directly analogous to the individuals in *Menchaca* and *Mendoza*. Plaintiffs were similarly crossing a crosswalk at the time of the accident. Plaintiffs' conduct qualifies even less as "occupying" because Plaintiffs were neither walking to or from the tour bus but had deboarded the bus nearly two hours prior and were heading back to their hotel. These same facts distinguish Plaintiffs circumstances from the insureds in *Manning* and *Cocking* because Plaintiffs were neither near the tour bus nor

---

[3] The parties also assert that no conflict exists. *See* (Doc. 37 at 13) ("Regardless of whether California or Arizona law applies, Plaintiffs were not 'occupying' the Tour Bus at the time of the Accident as a matter of law"); (Doc. 43 at 7) ("Even if California law were to apply, the result would be the same").

engaged in an activity related to the use of the tour bus at the time of the accident.

Plaintiffs argue that both Arizona and California look to the person's purpose and intent at the time of the accident to determine "occupancy." Because Plaintiffs' purpose and intent was to tour the Southwest, and they were using the tour bus for that purpose, Plaintiff argues either state would find them to be insureds under the Policy. Plaintiff relies on *Tobel v. Travelers Ins. Co.*, 195 Ariz. 363, 369, ¶¶ 20, 31, 988 P.2d 148, 154 (Ct. App. 1999) to support this position. However, in *Tobel*, the claimant was using his work truck's specialized safety flashers to alert other drivers to his presence while working on the road. The court in *Tobel* reasoned that because the claimant was using the truck for its intended purpose *at the time of the accident* he was "occupying" the truck for purposes of coverage under the underinsured motorist policy. No similar circumstances are present in this case. The tour bus was not being used for any purpose other than transportation and, more importantly, the tour bus was not being used by Plaintiffs at the time of the accident. Thus, *Tobel* does not support Plaintiffs' claim.

Because the Court finds that Plaintiffs were not "occupying" the tour bus under either Arizona or California law, Plaintiffs are not insured under the Policy. As a result, their breach of contract claim fails. To the extent Plaintiffs have asserted a bad faith insurance claim against Defendant RLI, the claim is barred because an insurance company's duty of good faith and fair dealing "arises by virtue of a contractual relationship." *Rawlings v. Apodaca*, 151 Ariz. 149, 153, 726 P.2d 565, 569 (1986); *Hatchwell v. Blue Shield of Cal.*, 198 Cal. App. 3d 1027, 1034 (1988) ("[L]iability for 'bad faith' has been strictly tied to the implied-in-law covenant of good faith and fair dealing arising out of an underlying contractual relationship. Where no such relationship exists, no recovery for 'bad faith' may be had."). Defendant RLI's Motion for Summary Judgment is granted.

**IT IS SO ORDERED** that Defendant RLI's Motion for Summary Judgment (Doc. 37) is **GRANTED.**

1    **IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment and
2    terminate this matter.
3    Dated this 17th day of January, 2020.

_____
G. Murray Snow
Chief United States District Judge